LOCKE *v.* WILSON.

1. EMPLOYMENT—SPECIAL CONTRACT—PREVENTING PERFORMANCE
   —RECOVERY.

   Where plaintiff was employed by defendants, copartners, to
   promote and organize a corporation to take over and operate
   defendants' brewery plant, and his compensation was fixed
   by special contract, which was unperformed, no recovery
   could be had upon the common counts for services rendered
   in his unsuccessful efforts, except upon the theory that de-
   fendants wrongfully prevented the performance of the con-
   tract.

2. SAME—COMPENSATION—CONDITION—PAROL EVIDENCE.

   The compensation having been fixed by correspondence, and
   being conditioned upon plaintiff's securing $28,000 in *bona
   fide* subscriptions to stock, it excluded the right of plaintiff to
   show by parol that one of the defendants agreed to take any
   balance of the $28,000 which plaintiff should be unable to place
   elsewhere, and it was error to submit to the jury the question
   whether defendant's refusal to do so prevented the perform-
   ance of the contract.

3. SAME—STOCK SUBSCRIPTIONS—REPRESENTATIONS TO PURCHASER.

   In his efforts to secure subscriptions to stock, plaintiff repre-
   sented to a prospective purchaser that the brewery was mak-
   ing a profit of $1.50 per barrel, claiming that defendant W.,
   who principally negotiated with him, so stated, but said pur-
   chaser was truthfully informed by W. that the profit was
   only 50 cents a barrel. *Held,* that, conceding plaintiff's
   representation to have been made in good faith, in the absence
   of evidence that but for its falsity the subscription would
   have been obtained, it could not be said that defendants pre-
   vented the performance of the contract.

4. SAME—INSTITUTING LITIGATION—ADVERSE INFLUENCE.

   On a day towards the close of the negotiations, when the pros-
   pective purchaser had met with the parties to further consider
   the matter, defendant W. filed a bill against his copartner for
   an accounting, which was claimed by plaintiff to have ad-
   versely influenced the purchaser, who subsequently decided
   not to take stock. *Held,* that W. was under no obligation to
   refrain from bringing such suit.

   135 Mich.—38.

Error to Ionia; Davis, J.   Submitted October 20, 1903. (Docket No. 48.)   Decided February 16, 1904.

*Assumpsit* by Charles P. Locke against William D. Wilson and Nicholas Biewer for services rendered.   From a judgment for plaintiff, defendant Wilson brings error. Reversed.

*O. C. Lungerhausen* and *George E. & M. A. Nichols*, for appellant.

*Morse & Locke, F. C. Miller*, and *R. A. Hawley*, for appellee.

HOOKER, J.   The plaintiff, as agent for other parties, sold a brewery for $12,500 to the defendant Wilson, who spent about $3,000 in betterments.   He knew little about breweries, but arranged a copartnership with Biewer, his codefendant, who was a practical brewer, to take a half interest and manage the business.   Biewer put $2,000 into the business, and owed Wilson for the remainder of the cost of his interest.   Biewer's management was not satisfactory to Wilson, and he employed the plaintiff to aid him in making a readjustment that should enable him to get out of the business without loss.   The scheme devised by them was to form a corporation to take the plant, and the plaintiff wrote to defendant Wilson suggesting it. This resulted in an interview at Ionia, at which the subject was talked over, when it was proposed that a corporation be formed through the efforts of the plaintiff, in the organization of which Wilson was to take $5,000 of stock, Biewer $5,000, and Courtright, a friend of Wilson or Biewer, $2,000.   It was also suggested that $500 be given to one Schmoltz, whom it was proposed to employ as a traveling salesman.   In this talk it was suggested that it would be well to interest local saloonkeepers as stockholders, and thereby secure their patronage for the brewery, and Locke and Wilson, and perhaps Biewer, went to see some of them on that occasion, and talked the matter

up with them.   Some talk had been had between plaintiff and Biewer as to the compensation to be received by the plaintiff for organizing the company, and Biewer had expressed a willingness to let him have $2,000 of stock for his services, provided that the same should be satisfactory to Wilson; and, in anticipation of the conference at Ionia, the plaintiff and Biewer made a list of the property, and Biewer fixed values upon the items, which the plaintiff put down, thereby making a sort of inventory of the property, and this was present at the interview at Ionia, and was seen by Wilson, and perhaps shown to the saloon-keepers approached, as hereinbefore stated.

Before leaving Ionia, Dr. Wilson's agent, Lungerhausen, explicitly stated that they would not agree upon anything that day, but that, after he and Wilson should have talked the subject over, he would write the plaintiff, and this he did.   It is manifest that he undertook to have an explicit understanding as to the obligation that Wilson was incurring, as will be seen from the two letters following:

"MT. CLEMENS, MICH., Sept. 26, 1900.
"CHARLES P. LOCKE,
              "Ionia, Mich.

"*Dear Sir:* On our way home the doctor and I went over the matter of forming the stock company carefully, and we came to this conclusion:   If you secure subscribers for $28,000, and the company is actually organized and the stock subscribed for paid up, you may have for your compensation the other $2,000 worth of stock.   This is to include payment in full for services of every kind and nature, time, and all expenses incurred by you in the forming and completing of the stock company.   The doctor will stand by his subscription, and Courtright will stand by his also.   What the doctor told you about giving $500 worth of stock in order to secure a certain party as a stockholder also goes.   This would leave $27,500 *bona fide* subscriptions.   In case, however, you fail to secure the stock required to form this company as herein provided, you are to receive nothing for your time, services, or for expenses.   This proposition is good for 30 days from date.   If the company is not formed within that time, everything is declared off.   If this is satisfactory, kindly

advise me promptly. In conclusion I would say that I sincerely hope you will be successful in the undertaking. I will cheerfully render you such assistance in the matter as I can.       Yours truly,

        "O. C. Lungerhausen."

       "Ionia, Mich., Sept. 29, 1900.
"O. C. Lungerhausen, Esq.,
    "Mt. Clemens, Mich.
 "*Dear Sir:* Your favor for Dr. Wilson is at hand. I have been out of the city considerably, Lyons, Muir, Portland, Pewamo, and St. Johns, and I get considerable encouragement. However, I have to go to each place at least twice to do business. . I think the time limit ought to be to November 1st. If I cannot do the business up in that time I would be willing to quit. Otherwise the terms of your agreement are satisfactory. I think I will get $3,000 out of Portland. I shall be out all next week. I have got Schmoltz tied up, and they are helping me what they can in a quiet way. I have been out with Schmoltz three days.      Yours respectfully,
       "Charles P. Locke."

No corporation was ever formed, although the matter was under negotiation until January, 1901, when it failed. Thereupon the plaintiff brought an action against Biewer and Wilson, and recovered a verdict for $700 as compensation for his efforts, and the defendant Wilson has brought error.

Plaintiff's brief states that this recovery was upon the common counts, so we need not concern ourselves with the special counts of the declaration. Furthermore, as it is not claimed that the contract was fully performed, the recovery must have been upon the theory that defendants wrongfully prevented its performance, thereby entitling plaintiff to collect pay for the services rendered in his futile efforts. The plaintiff's claims in this regard we understand to be as follows: He failed to get subscribers to the amount required because (1) the representation that he made to one De Conick that the brewery was making a profit of $1.50 a barrel on beer was contradicted by Wilson, who said in De Conick's presence that

it could be made to earn 50 cents a barrel; (2) Wilson be-gan a suit against Biewer on an occasion when De Conick had met with the parties to close up the matter, thereby causing De Conick to refuse to take stock, as he had prom-ised to do; (3) that, after the plaintiff had obtained $22,600 in *bona fide* subscriptions, the defendant Wilson refused to subscribe the remainder of the stock. To maintain this claim, plaintiff's counsel take the position that the letters do not constitute the entire contract, alleging (1) that they have in view the preceding talk, which was thereby given effect, in which they say that Wilson agreed to take all stock that the plaintiff could not place elsewhere; (2) that Mr. Wilson misrepresented the value of the property and its earning power at the time, thereby authorizing plain-tiff to make false representations, upon learning which De Conick refused to subscribe.

Defendant's counsel assign error upon the refusal of the court to direct a verdict for the defendant.

The two letters, upon which the minds of the parties evidently met, did not contain a stipulation that this com-pany should be organized to take over the brewery, or that its owners should transfer it to the company. All of this was left to be supplied by oral testimony, and such was competent for the purpose.

We think, however, that the writings are conclusive upon some things. The plaintiff's compensation was fixed thereby, and it was conditional upon his securing $28,000 in *bona fide* subscriptions, of which Dr. Wilson would take $5,000, Biewer $5,000, and Courtright $2,000. It excludes the right to claim that Wilson agreed to take any balance of the $28,000 which plaintiff should be unable to place elsewhere. It was therefore error to submit the case to the jury upon such a theory.

The plaintiff's next claim is that in some way the de-fendants are liable to him upon the ground that they are responsible for De Conick's failure to buy, and this seems to rest upon the theory that plaintiff had succeeded in interesting him upon the representation that the brewery

was making a profit of $1.50 a barrel on the beer made, and that the defendant Wilson informed him (De Conick) that this was not true, and also that Wilson commenced suit against Biewer, which two facts caused De Conick to refuse to take stock, which he would otherwise have done.

On the 1st of November the time fixed by the contract expired. Plaintiff saw Dr. Wilson, and an arrangement was made whereby the plaintiff was given more time. On November 17th plaintiff wrote that he had $22,600 subscribed, and wanted more time, and on the 18th he wrote again that he "felt confident he could bring the list up to $25,000, and asked Wilson if he would like the balance of the stock and complete the organization." Mr. Lungerhausen replied on the 23d of November that Dr. Wilson would give a little more time, but did not want Lungerhausen to take any more stock. On the same day plaintiff wrote Wilson that he had one Koppitz, of Detroit, interested, and wanted to know how much time he (plaintiff) could have. On the next day Lungerhausen wrote plaintiff that Dr. Wilson did not care to fix a particular time, but that he would give to December 5th, and possibly more time, if any progress was made. On December 4th plaintiff wrote Wilson that he was in communication with one De Conick, who wanted as much or more stock than was left; in fact, wanted a controlling interest. Lungerhausen replied that if De Conick could be interested it would be a good thing for all concerned, and that plaintiff might sell him any stock he wanted, "but that Wilson insisted that the matter be closed up within a few days." Soon after, plaintiff saw De Conick, and reported to Wilson that De Conick proposed that he would take any amount of stock, up to $16,000, upon condition that he should be manager with a salary of $4,000; and on December 12th he wrote that De Conick would be in Ionia on the following Tuesday or Wednesday, and he (Locke) thought the matter could be closed up at that time, but this meeting was canceled. On December 22d Lungerhausen wrote plaintiff that he would be in Ionia on

December 27th, and on the 24th he wrote again, saying that Wilson had instructed him to say that unless the stock company was completed that week the deal would be off. On the 27th all of the parties were at Ionia, considerable talk was had, and upon the same day Wilson, who thought Biewer had defrauded him as to the earnings of the brewery, filed a bill for accounting. On January 1, 1901, the plaintiff wrote to Lungerhausen that De Conick agreed to let him know that week whether he would take an interest in the brewery, that he (Locke) had talked to Wilson about it, and that Wilson said the matter was in Lungerhausen's hands, and that, if De Conick did not take it, he did not hope to get another man. Lungerhausen replied that he could give no further time, but gave him a conditional extension until Saturday of that week, i. e., January 5th. Before that time expired, De Conick decided not to take the stock.

The plaintiff's evidence shows that he never had a promise from De Conick to take stock. At most, he said he would like to do so if it suited him upon looking it over. He did look it over, and found some repairs and changes necessary. Moreover, if he had bought upon the statement that the brewery was earning $1.50 per barrel net, he would have been deceived. If this plaintiff really believed his representation to be true when made, it would have been his duty to correct this representation in case he should ascertain his mistake. Whether Wilson knew that such a representation had been made does not appear, but it is shown that he did not make such a claim to De Conick, and plaintiff asserts that he informed De Conick of the truth about it, as he ought to have done.

If plaintiff bases his claim upon the ground that the defendant should have kept still, and permitted the deception to bear its fruit, the position is untenable. We understand that he does not, but claims that he was justified in making the representation by the statement of Dr. Wilson, and did his work in reliance upon it, and therefore is entitled to pay. Biewer testified that Wilson told Locke

so. The circumstances under which he said it are not given, and we cannot say from the record whether there was any deception intended, or whether Locke was actually deceived, and made his representation in good faith. But it takes more than proof of deception to make out this case. Before the plaintiff is entitled to recover, it must appear that but for the falsity of the representation De Conick would have taken the stock. This is not proved, nor is there evidence from which it can be inferred. The most that can be said is that he considered the offer of stock, and said he would take some if he could be manager at $4,000 a year, provided that he should be satisfied when he looked over the situation. The $4,000 condition was not contemplated by the contract. De Conick did look over the plant, and found it not to his liking, and the matter went no further. Wilson was under no obligation to refrain from suing Biewer.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.